[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 339 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 340 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 341 
It may, in this action, be conceded, that the defendant was under obligation to transfer to his vendees a good title to the lease which he had agreed to assign; and that if he could not do so, they might refuse to perform their part of the agreement, and might recover the money they had paid in part fulfillment, or as security for performance by them. Though as to this, see Flight
v. Barton (3 Myl. K., 282; Cosser v. Collinge, id., 283.)
We think that he had a good title, and could transfer it to them.
The lease from Spofford Tileston to Wells contained a covenant by him not to assign it. It contained a condition, that if default should be made in the keeping of that covenant, it should be lawful for them to re-enter and dispossess him. In violation of his covenant, he did assign the lease to the defendant. Thus there was wrought a breach of the condition and a forfeiture of the lease, and the right to re-enter became operative, but the exercise of the right to re-enter was entirely in the option of the lessors. They might take their right to re-enter, or they might waive it. (Amsly v. Woodward, 6 B. . C., 519.) Any act done by the lessors after a forfeiture of the lease, which recognizes a continuance of the tenancy, is an election between the right to hold the tenant to his lease, subject to all of his duties and possessed of all his rights thereunder, and the right to re-enter and dispossess him. (Id.;Goodright v. Davids, 2 Cowp., 803.) The acceptance of renteo nomine, is ordinarily a recognition of the continuance of the tenancy; and when it is made after the act of forfeiture by the tenant, and with knowledge in the landlord of that act, it is a waiver of the forfeiture. The referee has found that the lessors, or their successors in *Page 343 
interest, did accept the rent of the demised premises from the defendant; and that they did it with knowledge of the assignment of the lease from Wells to him. The proof is that they accepted rent not only, but money in an arbitration. We think that it was fully established that the lessors, with knowledge that the lease had been assigned by Wells to the defendant, accepted thereafter rent which accrued thereafter, and did other acts by which they elected to waive the forfeiture and continue the tenancy. Thus the defendant, as the assignee of the lease, held and owned it as a valid demise to him of the premises. (Whitchcot v. Fox,
Cro. Jac., 398; Gregson v. Harrison, 2 T.R., 425.) And he had good right to assign it again, and could transfer to his assignee all his right and title, all the right and title of the original lessee. The condition against assignment was dispensed with by the lessors. A condition against assignment, once dispensed with, is dispensed with forever. (See Dakin v. Williams, 17 Wend., 447-458, and cases cited.) It follows that the defendant could fully perform his agreement to sell and transfer to the plaintiff and his co-partners the lease, unless there is force in the objection made by the plaintiff, which is now to be noticed.
It is insisted, that to fully meet all that is expressed and implied in his agreement, the defendant must be able to make a transfer which would, on its face, be valid; and that the agreement, fairly interpreted, does not warrant any other construction, than that the defendant was to make a valid transfer by the papers that he should execute and deliver conveying a clear title, sufficient without reliance upon something dehors the instrument, and without resting on parol proof of facts and circumstances.
It is undoubtedly so, that a court of equity will not compel a purchaser to take a conveyance of a doubtful title. (Seymour v.Delancey, 1 Hopk., 436.) But the courts of equity in this State have not held that a title, though the proof thereof rests in part in parol, is, for that reason, so doubtful and uncertain as that specific performance by the *Page 344 
purchaser will not be decreed. And it has been held, that where one of the paper links of title was defective, the lapse might be supplied by parol proof of possession, under color of title, sufficient to establish a good adverse possession; and that such a title is enough on which to found a decree. (Id.) So, in England, it has been held that a title is not doubtful, where a presumption is so violent of a certain act (as a surrender of a term) having been done, as that a court would direct a jury to find that fact. (Emery v. Grocock, 6 Madd., 41; see, also,Prosser v. Watts, id., 45; see, also, Spring v. Sandford,
7 Paige, 550; Belmont v. O'Brien, 12 N.Y., 394.) Indeed, it has been expressly held, that a court of equity, by assuming a jurisdiction to compel the specific performance of agreements, necessarily forced upon itself the difficulty of determining questions of fact. (Smith v. Death, 5 Madd., 371.) In that case, the question was, whether a first son had been brought up and educated as a member of the established church of England, and was a constant frequenter of such church. It was held that the fact was capable of proof, and was satisfactorily proved, and the exceptions to the title were overruled. So in Spencer v.Topham (22 Beavan, 573), there was a question of fact to be determined by parol proof, whether a solicitor (Philipps), who was the grantor of the plaintiff, had dealt fairly with his client (Bate), who was the vendor to him. The court held that it was established by the proof that he had, and decreed specific performance; saying, the question is, whether, if this were a suit by Bate against Philipps to set aside the sale to him, a decree to that effect would be made. Nor does the authority cited for the plaintiff (2 Hilliard on Vendors, 17) sustain his proposition. That text book cites Metcalfe v. Dallam (4 J.J. Marsh., 200). A reference to that case shows that such doctrine is not there held, and that the decision is not in conflict withSeymour v. Delancey (supra).
The citation of these authorities is not absolutely necessary in the case in hand, for it is brought on the law side of the courts. The plaintiff proceeds upon strict legal rights. *Page 345 
He refuses to perform his contract, and sues to recover back the amount of a payment made thereon. He puts his right to recover upon the ground that the defendant cannot perform on his part, in that he cannot give a good title to the lease. To answer this, the defendant needs make no other, higher or better proof, than he would need make if the original lessors or their successors in interest sought to dispossess him from the demised premises on the ground of a forfeiture of the lease by a breach of the condition against assignment. (22 Beavan, supra.) In an action therefor he need do no more to defend with success, than to establish by parol proof, that the lessors had knowledge of the assignment of the lease to him; that with that knowledge they accepted payment of rent from him, as rent on the lease which had accrued after the assignment. That proof, in that way, he makes in this case. It is of equal power.
It is further claimed, that after the making of the agreement in writing between the parties, the defendant made a further parol agreement, by which he is bound, and which he has not fulfilled, and that therefore, the plaintiff may annul the contract and recover back the deposit or payment. It is this: The referee has found that the defendant promised the plaintiff, and agreed with him to obtain from the original lessors or their successors, if possible so to do, a written consent to the assignment of the lease from the defendant to the plaintiff. He has also found that such consent could not be obtained, for the reason that one of the original lessors had died, leaving infant heirs at law; which latter finding is tantamount to one that it was not possible to obtain such consent. Conceding that this parol agreement is supported by a good consideration, it appears that the parties did in it stipulate that it was not to be kept, unless it should turn out that it could be. That is to say, it was not an absolute promise, but one conditional. The event upon which it was conditioned did not and could not come to pass. In this it was like to a contract to sell and deliver goods expected from a certain port by a certain ship. They are sold to arrive,i.e., *Page 346 
if they do arrive; or on condition that they shall arrive. Or like a promise to pay a debt, in bar of which has run the statute of limitations, if the promissor shall be able. His after ability is a condition. And in the first case the contract is not enforceable unless the goods do arrive, nor in the last case unless the promissor becomes able. So here, the agreement was not enforceable, for that it was not possible to do the thing agreed to be done. In other words, it was not so much an agreement to procure the assent, as a promise to attempt to procure it, if haply it might be done, and so the objection of the plaintiff be met. As it turned out that it could not be, the written agreement of sale and purchase of the lease remained in force, and each party was bound to performance, and could be relieved from his obligation thereto, only by the failure or inability of the other party, or release by him.
Stress is also laid upon a finding of the referee, that the parties mutually rescinded the agreement. This finding is excepted to by the defendant. If it is not sustained by any evidence the exception is well taken.
This finding is, "that thereafter * * * the said parties, plaintiff and defendant, mutually rescinded said agreement, and the said Harway sold the said lease and chattels to other parties." Without pausing to inquire how much this is a finding of law as well as of fact, let us see if it is sustained by any evidence. What does the referee mean by "thereafter?" In the fifth finding he states, "that such consent could not be obtained, and that said Murray, Stover and Lachmeyer, thereupon, refused to perform said agreement on their part." It was after that, after the impossibility of obtaining the consent, and after Murray and the others had refused to perform, that it is found that there was a mutual rescission. And this is apparent also, from the connection of the rescission with the taking possession again by Harway of the premises and chattels, and the sale by him to other parties. There is testimony that the plaintiff refused to perform and, as far as in him lie, rescinded the agreement. It is in *Page 347 
his letter to the defendant of date August 1, 1865, which states that in consequence of defendant not fulfilling the terms of the contract of sale, he has decided to withdraw from further negotiations and to rescind the contract. I think that this is the first evidence of attempted rescission by the plaintiff, and this the earliest date at which he made it. The letter of the defendant, in reply, claims that he has fulfilled, and been ready to close the matter, and asserts that the papers have been executed and tendered to purchasers, and are thus ready for delivery to the plaintiff and his copurchasers; that he cannot return the $5,000, and is, by the plaintiff, placed in such position as that he must demand damages for non-fulfillment of the contract on the part of the plaintiff and his copartners. This letter of the defendant shows that he adheres to the contract and wishes and demands a performance of it. There is not the least indication in it of a rescission or abandonment of the contract by him, or of an excusing of the plaintiff from his agreement. It is suggested that the question of a conditional rescission of the contract within the intention of the parties, was dependent upon the success of the defendant in getting consent to an assignment of the lease; that this was a question of fact, to be determined by the referee, and that he has found against the defendant upon that subject. The finding of the referee is not that; it is that there was a mutual rescission, but not until after the refusal by the plaintiff to perform. Nor can this be properly drawn from the negotiations as to the obtaining of the consent to an assignment, as inference of an intention by the defendant to abandon the contract if his attempt to get the consent should fail. A treaty and negotiation for a variation of an agreement, will not amount to a waiver of it, unless the circumstances show an intention of the party that there should be an absolute abandonment and dissolution of the contract. (Robinson v. Page, 3 Russ., 114.) The circumstances here, show a willingness to meet the wishes and objections of the plaintiff, but not a purpose to release him from his obligation if it could not be done. We find no evidence *Page 348 
to sustain the referee's finding, that after the failure to obtain the consent, and after the refusal of the plaintiff to perform, the defendant on his part abandoned and rescinded the contract. The fact that the defendant resumed possession of the subject-matter of the contract is thought to have a bearing upon this point. This was not done, however, until after the plaintiff and his copartners had abandoned the premises and given up the care of the large personal chattel property. The defendant took possession and charge of it for its preservation, and to prevent loss and damage. This act cannot be evidence of a surrender of the contract and of his right under it, when viewed in connection with his letter asserting his adherence to it, and his demand upon the plaintiff. On another trial the facts may be differently presented. But, as they are now shown by the testimony and the findings, the law of the case is with the defendant.
The judgment appealed from must be reversed and a new trial ordered, with costs to abide the event.
All concur.
Judgment reversed.