GILLETTE BROS., INC., Appellant, *v.* THE ARISTOCRAT RESTAURANT, INC., Respondent.

Landlord and tenant — effect of provision in lease that if proceedings in bankruptcy be instituted by or against the tenant the landlord may terminate the lease by a three days' notice to that effect — when such provision applies to bankruptcy of the original lessee only and not to assignees or sub-assignees of the lease.

1. In a lease of real estate for a term of years the lessees, designated as " the tenant," covenanted not to assign or sublet the lease without the lessor's consent and also that if proceedings in bankruptcy should be started by or against " the tenant," or by operation of law the lease should pass to any person other than " the tenant," it would be lawful for the landlord to terminate the lease by a three days' notice to that effect mailed to " the tenant." Thereafter " the tenant," presumably with the consent of the landlord, assigned the lease to the plaintiff herein who went into possession of the premises and paid the rent to the landlord. There was no privity of contract between the assignee and the landlord, only privity of estate, and the original lessee, because of privity of contract, remained liable on the covenants although privity of estate was destroyed. Thereafter the assignee of the lease, the plaintiff herein, leased the premises for the remainder of the term to the defendant upon certain conditions. While it reserved the right of re-entry for condition broken, between the original lessor and the defendant this was an assignment of the lease and the privity of estate between the plaintiff and the original lessor was at an end and with its termination also ceased all obligations. on covenants running with the land.

2. Later, receivers of the plaintiff were appointed by the United States courts and a petition in bankruptcy was filed against it.

Thereupon the original lessor served upon the original lessee, the plaintiff . and the defendant notice of the termination of the lease. Upon receiving this notice the defendant voluntarily vacated the premises. It had the right so to do if the lease was properly canceled but the burden is on it to show this fact. If it cannot, it is still liable to the plaintiff for the rent it agreed to pay. It is to recover such rent that this action is brought, the petition in bankruptcy and the equity suit, in which the receivers were appointed, having been dismissed. Neither plaintiff nor defendant acquired by the assignments of the lease any greater rights than were possessed by the original lessees. Under the circumstances it cannot be held that the clause as to bankruptcy refers to an intermediate assignee who has re-assigned the lease and whose liability to the lessor is, therefore, terminated. It follows, therefore, that the bankruptcy of such an assignee did not result in a forfeiture of the lease.

*Gillette Bros.* v. *Aristocrat Restaurant,* 209 App. Div. 597, reversed.

(Argued October 20, 1924; decided November 25, 1924.)

APPEAL from a judgment, entered June 4, 1924, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury and directing a dismissal of the complaint.

*Jerome A. Strauss* for appellant. The filing of the petition in bankruptcy against plaintiff corporation did not constitute a violation of the Schulte lease. (*Mann Case,* 225 N. Y. 189; *Riggs* v. *Pursell,* 66 N. Y. 193; *Smith* v. *Rector, etc.,* 107 N. Y. 610; *Dougherty* v. *Matthews,* 35 Mo. 520; *Kemp* v. *Bird,* L. R. [5 Ch. Div.] 974; *McClintock* v. *Loveless,* 5 Penn. Dist. Rep. 417; *Bruder* v. *Crafts & D. Co.,* 79 Misc. Rep. 88; *Coffin* v. *Talman,* 8 N. Y. 465; *Ovington Bros. Co.* v. *Henshaw,* 47 Misc. Rep. 167; 155 App. Div. 886; 190 N. Y. 504.)

*Clarence M. Lewis* and *Donald Marks* for respondent. Plaintiff as assignee of the lease from the Schulte Realty Company to the partnership was bound by the provisions

thereof under which the Schulte Company terminated it. (*Miller* v. *Levi,* 44 N. Y. 489; *Mann* v. *Munch Brewery,* 225 N. Y. 189; *Matter of Lonas* v. *Silver,* 201 App. Div. 383; *112–114 Ridge Street Corp.* v. *Glickman,* 193 N. Y. Supp. 448; *Childs Co.* v. *Burke,* 110 Misc. Rep. 103; 180 N. Y. Supp. 919; *Matter of Szpakowski,* 166 App. Div. 578; *Bruder* v. *Geisler,* 47 Misc. Rep. 370; *Bore* v. *Cuppola,* 91 N. Y. Supp. 18; *Moore* v. *Risley,* 287 Fed. Rep. 10; *Matter of Lindy-Friedman Clothing Co., Inc.,* 285 Fed. Rep. 22; 275 Fed. Rep. 453; *Matter of Sweeney,* 94 Misc. Rep. 617.)

ANDREWS, J.  On February 21, 1918, the Schulte Realty Company leased to Maurice and Charles Gillette as copartners certain premises for the term of ten years. The lease itself states that the copartners are described therein as " the tenant."  The lessees entered into several covenants, one against the assignment of the lease or underletting without the landlord's written consent.  It was further agreed that " if proceedings in bankruptcy shall be instituted by or against the tenant  *  *  *  or if this lease shall by operation of law pass to any person other than the tenant it shall be lawful for the landlord to terminate this lease by a three days notice to that effect mailed to the tenant."  In other clauses throughout the lease it is the original lessees who are again spoken of as the " tenant."  In the sixth clause, for instance, it is said that " the acceptance of rent by the landlord from any assignee, subtenant, mortgagee or successor in interest of the tenant  *  *  *  shall not relieve the tenant herein from his obligation to pay the rent herein reserved."

" Thereafter," it is found " the plaintiff corporation was formed and went into possession of the said premises and paid the rent to the landlord."  From the fact of possession and the payment of rent it is to be presumed that the plaintiff was an assignee of the lease and that the proper

consent had been given. (*Frank* v. *N. Y., L. E. & W. R. R. Co.*, 122 N. Y. 197; *Murray* v. *Harway*, 56 N. Y. 337; *Dickinson Company* v. *Fitterling*, 69 Minn. 162; *Bedford* v. *Terhune*, 30 N. Y. 453, 459.) But between it and the lessor there was no privity of contract. There was but privity of estate. It was bound by such covenants as ran with the land so long as it remained assignee of the lease and in possession; but it might discharge itself from all further liability by assigning its interest in the premises to a stranger. (*Childs* v. *Clark*, 3 Barb. Ch. 52.) The covenant against assignment without the landlord's consent having been once waived is gone. (*Murray* v. *Harway*, *supra*.) The original lessee, however, because of privity of contract remained liable on the covenants although privity of estate was destroyed.

On June 10, 1921, the plaintiff purported to lease the premises for the remainder of the term to the defendant at an increased rental payable to it and upon certain conditions or covenants. While the instrument reserved the right of re-entry for condition broken, between the original lessor and the defendant it was an assignment of the lease. True in form it was a sublease. True it is so termed in a consent given by the Schulte Company to the original lessees — a consent unimportant after the original assignment except with regard to the use to be made of the premises. But the entire term was transferred. The possible right of re-entry for breach of any condition was not the retention of such a reversionary interest as is intended when distinctions are drawn between assignments and subleases. (*Stewart* v. *L. I. R. R. Co.*, 102 N. Y. 601; *Bedford* v. *Terhune*, 30 N. Y. 453; *Herzig* v. *Blumenkrohn*, 122 App. Div. 756; *Craig* v. *Summers*, 47 Minn. 189; *Sexton* v. *Chicago Storage Co.*, 129 Ill. 318.) Even if the authority of *Ganson* v. *Tifft* (71 N. Y. 48) has not been shaken by later decisions, there is here no express covenant that the premises shall be surrendered to the plaintiff at the end of the term. They are to be

surrendered; to whom is not stated. This omission is only consistent with the idea that the surrender is to be made to the Schulte Company.

Being an assignment, privity of estate between the plaintiff and the Schulte Company was at an end, and with its termination also ceased all obligations on covenants running with the land. Among others no liability for rent remained.

Later, receivers of the plaintiff were appointed by the United States courts and a petition in involuntary bankruptcy was filed against it. Upon this the Schulte Company served upon the Gillettes and upon the plaintiff and the defendant notice of the termination of the lease. Upon receiving this notice the defendant voluntarily vacated the premises. It had the right so to do if the lease was properly canceled but the burden is on it to show that fact. If it cannot it is still liable to the plaintiff for the rent it agreed to pay. It is to recover such rent that the action is brought, the petition in bankruptcy and the equity suit in which the receivers were appointed having been later dismissed.

Neither the plaintiff nor the defendant acquired by these assignments any greater rights than were possessed by the original lessee. Whatever the provision as to termination in case of bankruptcy may be called both parties took the lease subject to such right. The only question is as to the meaning of that clause. Does it mean bankruptcy of the original tenant, or of his assignee, or of any one of a long line of possible assignees? Or does it mean the bankruptcy of any one of these?

Probably the clause refers to bankruptcy of the original tenant. As has been seen, all through the lease the word " tenant " is used as plainly referring to the Gillettes. Assignees, subtenants or successors in interest are sharply differentiated from the tenant. The continuing liability of the tenant for rent after assignment not only follows as a matter of law because of the covenant in the lease

but it is expressed.   The clause should be given a reasonable construction.   The lessor had some object in making this provision.   Obviously it was to secure a responsible tenant.   Naturally, therefore, it might provide for the forfeiture of the lease if such tenant became bankrupt. As to the responsibility of the tenant it may be assumed to have had some knowledge.   Knowledge as to the responsibility of the tenant's assignee or of the assignee of the assignee is less certain.

Yet at most the provision can be applied only to an assignee actually in possession and liable to the lessor on covenants running with the land or to such assignee and to the original tenant.   Working a forfeiture the language is to be strictly construed.   Certainly it could never have been intended that an intermediate assignee who has re-assigned and whose liability of every kind towards the lessor had ceased should be described by the word " tenant " and that the bankruptcy of such a third party should result in the forfeiture of the lease.   This is all that we are now required to decide.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

McLAUGHLIN, J. (dissenting).   The lease was assigned to the plaintiff.   This fact must be assumed from the possession and payment of rent by it.   (*Frank* v. *N. Y., L. E. & W. R. R. Co.,* 122 N. Y. 197; *Murray* v. *Harway,* 56 N. Y. 337; *Dickinson Co.* v. *Fitterling,* 69 Minn. 162.)   This fact must be assumed not only by possession and payment of rent, but also because the realty company gave its consent to the assignment of the lease.   When the plaintiff took an assignment of the lease, with the consent of the realty company, it assumed and agreed to carry out all of the terms therein specified.   One of the terms was: " It is further understood and agreed that the covenants and agreements herein contained are binding on the parties

hereto and their legal representatives." The plaintiff is the legal representative, so far as this lease is concerned, of Gillette Bros. The words " legal representatives," while not strictly applicable to a corporation, may, nevertheless, be so considered for the purpose of carrying out the intent of the parties. One of the terms of the lease was that if proceedings in bankruptcy were instituted by or against the tenant, then the realty company had the right, on giving three days' notice, to terminate the lease and regain possession. But it is said that because the word " tenant " is still in the lease, it obviously referred to the original tenant — Gillette Bros. I am unable to place such construction upon the lease. The word " tenant " as used in the lease refers to any one who is lawfully in possession of the premises as a tenant.

What the realty company was trying to protect itself against was not only the non-payment of rent, but against one's occupying the premises if bankruptcy proceedings were instituted against him; in other words, the reputation of the place and its good will also concerned the realty company. It did not want the premises occupied by a bankrupt, and to hold otherwise is, as it seems to me, to destroy one of the objects sought to be accomplished by the lease itself.

I, therefore, dissent and vote to affirm.

HISCOCK, Ch. J., CARDOZO, POUND and LEHMAN, JJ., concur with ANDREWS, J.; McLAUGHLIN, J., reads dissenting opinion, in which CRANE, J., concurs.

Judgment reversed, etc.