TEL-HOTEL CORP., Plaintiff, *v.* LEXNOTT CORPORATION et al., Defendants.

Supreme Court, Trial Term, New York County, June 16, 1953.

*Francis J. Ryan, Jr.,* for plaintiff.

*James F. Donnelly* and *Samuel Michelman* for Lexnott Corporation, defendant.

*Samuel Gottlieb* for Gibralter Security Corporation and others, defendants.

WALTER, J.  Plaintiff installed in the Hotel Shelton certain equipment by the use of which the guests of the hotel are enabled to see television programs in their respective rooms.  It did so under a contract made September 26, 1949, with defendant Lexnott Corporation, the then owner of the hotel, under its then name of Shelton Hotel, Inc.  By that contract said defendant agreed to pay to plaintiff for the use of said equipment stated sums on the 1st and 15th of each month for a period of five years from January 1, 1950.  Under the terms of that contract there became due to plaintiff for the months of March, and April, 1952, a total of $10,128.80, and plaintiff here sues to recover that sum.  It concededly has not been paid, but before March, 1952, Lexnott had ceased to be the owner of the hotel and other defendants had become owners or lessees thereof; and Lexnott claims that its liability under that contract had been terminated before that date, while plaintiff claims that the liability of Lexnott continues and that the other defendants also have become liable thereunder.

Those claims present the questions to be decided.

On April 13, 1951, Lexnott Corporation agreed to sell the hotel to defendant Gibralter Security Corporation, which agreed to assume performance of the contract with plaintiff and to hold Lexnott harmless from the obligations thereof.  Gibralter assigned its rights under that contract to defendant Schleifer, who in turn assigned such rights to defendant 839 Madison Avenue Corporation; and on August 2, 1951, Lexnott conveyed the hotel to defendant 839 Madison Avenue Corporation, which in turn conveyed it to defendant Schleifer.

Schleifer, on the same day, leased the hotel to defendants Wolf and Goldfinger, by a lease in which they assumed plaintiff's contract and agreed to perform it; but by paragraph 25 of that lease it was provided that in the event they assigned the lease they should thereupon be automatically released from further liability under the lease.

On February 4, 1952, Wolf and Goldfinger agreed to sell the lease to Eman Realty Corp., which assigned its rights to defendant 523-537 Lexington, Inc., and on March 1, 1952, Wolf and Goldfinger assigned the lease to defendant 523-537 Lex-

ington, Inc., which assumed the lease and agreed to perform the covenants of the lessees and to indemnify them for any damage arising out of a default by it in the performance of such covenants.

523–537 Lexington, Inc., then assigned the lease to defendant Hotel Shelton Company, a copartnership, which was in possession of and operating the hotel and incidentally using plaintiff's equipment during March, and April, 1952.

The liability of Lexnott seems to me entirely clear. By the contract it promised to pay for five years, and there is nothing in the contract which makes a sale of the hotel a termination of the continuing liability imposed by that promise; and such sale does not terminate it as a matter of law (*Gillette Bros.* v. *Aristocrat Restaurant,* 239 N. Y. 87, 90).

By a writing dated January 6, 1950, the contract of September 26, 1949, was modified, and it is that writing which counsel for Lexnott invoke as terminating Lexnott's liability. I think their contention rests upon a wholly untenable construction of that writing. They interpret it as a new and independent contract whereas it specifically states that it is a modification of the contract of September 26, 1949; and there is not a word in it which says that Lexnott's promise to pay contained in the contract of September 26, 1949, is to end in the event of or because of a sale of the hotel by Lexnott. It provides that Lexnott shall immediately notify plaintiff in the event of a proposed sale or lease of the hotel, and on or before the effective date of such sale or lease shall obtain and deliver to plaintiff a written undertaking of the purchaser or lessee to assume and be bound by the contract with plaintiff. If Lexnott fail to obtain and deliver such written undertaking, Lexnott agrees to purchase plaintiff's equipment and plaintiff agrees to sell it.

For present purposes it is not material to inquire whether Lexnott did or did not fail to obtain and deliver such written undertaking of assumption as the January 6, 1950, writing contemplated, because nothing in this case turns on whether Lexnott did or did not acquire a right to buy plaintiff's equipment. It has not attempted to assert a right to buy and has not complained of any refusal by plaintiff to sell the equipment.

It doubtless is true that if Lexnott had purchased the equipment the entire agreement of September 26, 1949, would have been terminated by such purchase, and in that event Lexnott's obligation to pay to plaintiff the sums stipulated in that agreement would have come to an end, and it thus perhaps is accurate

to say that the January 6, 1950 writing provides for termination of the contract upon which plaintiff sues; but even granting that, it yet is the sale of the equipment which would terminate plaintiff's contract, and not a sale of the hotel which would terminate Lexnott's obligation to make the payments specified in that contract.

It is to be added, moreover, that in connection with its sale of the hotel Lexnott did obtain the written undertaking of Gibralter Security Corporation to assume plaintiff's contract, and there thus never arose a situation under which Lexnott had a right to bring about a termination of plaintiff's contract by buying plaintiff's equipment.

The second paragraph of the January 6, 1950 writing states that if Lexnott shall default in any of the " payments hereinabove provided " for a period in excess of fifteen days, plaintiff has the right to remove its equipment or discontinue operation of the system until such time as the arrears are paid, Lexnott to remain liable, nevertheless, for the payments provided for herein " during such period of discontinued service."

There may be some room for argument as to whether the phrases " payments hereinabove provided " and " payments provided for herein " refer to payments for the purchase price of the equipment mentioned in the first paragraph of the writing of January 6, 1950, or to the semimonthly payments for use of the equipment set forth in paragraph eleven of the agreement of September 26, 1949. I think they refer to the latter, but whichever interpretation is adopted I cannot see that the provision affords any support for Lexnott's present contention that it is not liable for the payments for the use of the equipment in March, and April, 1952. So far as I can see, there is not a word in the January 6, 1950 writing which even remotely suggests any diminution or termination of Lexnott's liability under the promise contained in the original contract.

The affirmative assertion that Lexnott is to remain liable for the use payments while service is temporarily suspended because of a default in the payment of prior charges is by no means an assertion that that liability does not continue while service continues.

Still further, plaintiff and Lexnott made a further agreement on May 1, 1951 (after Lexnott had contracted to sell the hotel), by which the September 26, 1949 contract was further modified by changing the rate per day to be paid plaintiff in respect of

certain rooms; and the making of that agreement of modification at that time seems to me wholly inconsistent with the idea that the effect of the January 6, 1950 writing was to end Lexnott's liability to plaintiff upon the consummation of a sale or lease of the hotel.

As defendant Gibralter, in its contract to buy the hotel, expressly assumed plaintiff's covenant, it, too, is liable to plaintiff upon that promise to assume; and to the existence of that liability of Gibralter upon its agreement to assume, it is not necessary that the liability of Lexnott be extinguished. There of course are some situations in which the introduction of a new party as liable upon a contract can be accomplished only by an agreement by which the liability of the party originally contracting is extinguished (*Inman* v. *Burt Co.*, 124 App. Div. 73, affd. 195 N. Y. 558); but that is not true of an assignment of the rights and assumption of the duties under such a contract as is here involved. Plaintiff is entitled to retain the liability of the original promisor, Lexnott, and also enforce the added liability of Gibralter upon its assumption of liability (2 Williston on Contracts [rev. ed.], § 418, p. 1199).

By becoming assignees of Gibralter's rights under its contract of purchase, defendants Schleifer and 839 Madison Avenue Corporation did not become liable upon the contract of plaintiff with Lexnott. Subdivision (2) of section 164 of the Restatement of Contracts is exactly contrary to the law of New York (*Langel* v. *Betz*, 250 N. Y. 159; *Anderson* v. *New York & Harlem R. R. Co.*, 132 App. Div. 183, 187, 188; *Smith* v. *Morin Bros.*, 233 App. Div. 562, 564; *Title Guar. & Trust Co.* v. *457 Schenectady Ave.*, 260 N. Y. 119, 127; *General Meter Service Corp.* v. *Manufacturers Trust Co.*, 182 Misc. 184, 187, affd. 267 App. Div. 992; *Matter of Kaufman*, 272 App. Div. 578).

The contract by which Lexnott, under its then name of Shelton Hotel, Incorporated, agreed to sell the hotel to Gibralter, describes Gibralter as '' Purchaser ''; the language by which Gibralter assumed plaintiff's contract is, '' The Purchaser assumes the performance of '' the contracts set forth in a schedule in which plaintiff's contract is listed; and paragraph twenty-seven of the contract states, '' Wherever the term ' Purchaser ' is used herein, the same shall include the assignee if there be one.'' On the basis of those words, plaintiff argues that by becoming an assignee of Gibralter's rights under that contract Schleifer and 839 Madison Ave. Corporation brought themselves within the term '' Purchaser '' as therein defined and

thus assumed plaintiff's contract. I think that that is an untenable construction of the words of the contract and, also, that no definition of a word in a contract between A and B can be binding upon C merely because C becomes an assignee of the rights of A or B under that contract. To accede to plaintiff's argument on this point would be equivalent to holding that the very usual provision, commonly found in many contracts, that the contract is to be binding upon the successors and assigns of the parties, is enough to convert any assignee of the rights of one party into an assumer of the obligations of that party, and I think that is a doctrine much too dangerous to adopt.

In their lease from Schleifer, defendants Wolf and Goldfinger assumed and agreed to perform plaintiff's contract, but that assumption was limited by the further express provision that in the event of an assignment of the lease by them they shall thereupon be automatically released from further liability "hereunder". As their assumption of plaintiff's contract was a liability "hereunder", I think their assignment of the lease released them not only from liability to their landlord, but, also, from liability to plaintiff; and as they assigned the lease before the sums of money here sued for accrued, I think they are not liable to plaintiff in this action.

The instrument by which Wolf and Goldfinger assigned the lease to defendant 523-537 Lexington, Inc. contains the express statement that the assignee assumes the performance of all the terms, covenants and conditions of the said lease on the part of the lessee to be performed. I have just held, however, that the lease did not obligate the lessees (Wolf and Goldfinger) to pay sums becoming due to plaintiff after their assignment of the lease; and as payment of sums becoming due to plaintiff after that assignment is not a term, covenant or condition of the lease on the part of the lessee to be performed, it follows that 523-537 Lexington, Inc. did not assume any obligation to make payment of such sums.

That conclusion is reinforced, I think, by a consideration of the entire transaction by which the assignment to 523-537 Lexington, Inc. was accomplished.

Wolf and Goldfinger originally agreed to sell the lease to Eman Realty Corp. (not a party to this action), and paragraph twelve of the contract by which they so agreed to sell contains the provision that Eman agrees to assume all service contracts *except the television contract*. Eman then assigned that contract to 523-537 Lexington, Inc.; and in connection with that assign-

ment, Wolf and Goldfinger and 523-537 Lexington, Inc. made a separate agreement by which 523–537 Lexington, Inc. assumed that contract (i.e., the contract between Wolf and Goldfinger and Eman Realty Corp.) and by which it was provided that said paragraph twelve thereof " shall survive the closing under said contract ". It was after the making of that agreement that Wolf and Goldfinger assigned the lease to 523-537 Lexington, Inc., and it is in the light of that agreement that the scope of the assumption contained in the assignment is to be considered.

The facts just stated seem to me to make it plain that Eman was affirmatively refusing to assume the television contract and that 523-537 Lexington, Inc. was intending to assume no more than Eman had agreed to assume; and in the light of those facts I think the assumption actually inserted in the instrument of assignment from Wolf and Goldfinger to 523–537 Lexington, Inc. cannot be construed to include an obligation by 523-537 Lexington, Inc. to pay sums becoming due to plaintiff under its contract after the assignment from Wolf and Goldfinger to it was made.

The instrument by which 523-537 Lexington, Inc. assigned the lease to Hotel Shelton Co., the copartnership defendant herein, contains no assumption of plaintiff's contract by that copartnership. But neither is that copartnership a mere assignee of rights under a contract. It is in possession of the hotel under a lease thereof and is operating it as lessee, and in connection with such operation it is using plaintiff's equipment, and it was so using such equipment during the time the sums here sued for accrued. As to that defendant, therefore, I think the only substantial question is whether it is liable for the sums stipulated in plaintiff's contract or for some other sum measured either by value of use or damages for some breach of contract.

It long has been an established rule that the assignee of a lease, even though he has not assumed the obligations of the lease, is liable for the rent reserved therein while he remains in possession under the lease (*Durand* v. *Curtis,* 57 N. Y. 7, 11; *Frank* v. *New York Lake Erie & West R. R. Co.,* 122 N. Y. 197, 221; *Mann* v. *Munch Brewery,* 225 N. Y. 189, 195; *Gillette Bros.* v. *Aristocrat Restaurant,* 239 N. Y. 87, 90; *Lynch* v. *Joseph,* 228 App. Div. 367). Plaintiff's contract doubtless is a license rather than a lease (*Muller* v. *Concourse Investors,* 201 Misc. 340; *Kaypar Corp.* v. *Fosterport Realty Corp.,* 69 N. Y. S. 2d 313, affd. 272 App. Div. 878; *Wash-O-Matic Laundry Co.,* v. *621 Lefferts Ave. Corp.,* 191 Misc. 884), and it thus may be that

between plaintiff and defendant copartnership there does not exist that privity of estate which usually is stated as the reason for holding a nonassuming assignee of a lease liable for rent which accrues while he is in possession under the lease. But essentially and fundamentally such an assignee is so held because it is just that he should be required to pay for the use of property which he uses, and regardless of the many manifest differences between a lease and a license, I think that that fundamental consideration of justice requires that defendant copartnership be held liable for such sums as become due to plaintiff under its contract while that copartnership remains in possession of the hotel and uses plaintiff's equipment in the operation thereof, even though there is no technical privity of estate.

I conclude, therefore, that plaintiff is entitled to judgment for $10,128.80, with interest from May 15, 1952, against defendants Lexnott Corporation, Gibralter Security Corporation, and Hotel Shelton Co.. and that the motions of defendants 839 Madison Ave. Corporation, Louis Schleifer, Joseph Wolf, Theodore Goldfinger and 523-537 Lexington, Inc. for the direction of a verdict in their favor must be and are granted. I direct the entry of judgment accordingly.

Lexnott Corporation is entitled to judgment over against Gibralter Security Corporation for such sum, if any, as Lexnott Corporation may be called upon to pay hereunder; but as the judgment in plaintiff's favor is against Gibralter as well as against Lexnott and Gibralter may pay that judgment to the exoneration of Lexnott, I am of the opinion that no judgment over can be entered now nor until upon a subsequent application it is shown that Lexnott has been compelled to pay the judgment now directed in plaintiff's favor against it.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.