SALVADOR BENADON, Respondent, *v.* JORGE ANTONIO, Appellant.

First Department, February 23, 1960.

*Nathan Shapiro* of counsel (*Nathan Hendon* and *Berthold H. Hoeniger* with him on the brief), for appellant.

*Milton Seaman* for respondent.

BREITEL, J. Defendant, an Argentinian, appeals from an order denying his application to vacate a default judgment i the amount of $1,434,924.35 and to require plaintiff, pending the determination of the action, to deposit with the court the sum of $141,828.85 which was attached and then levied upon under the default judgment.

Special Term denied defendant's application primarily on the ground that the default was willful, intentional and deliberate. This finding cannot be sustained, but the order should nevertheless, in this respect, be affirmed because defendant has failed to demonstrate adequately that he has a meritorious defense. The judgment, however, may be reduced to the amount of the funds attached prior to the entry of judgment.

The action was commenced in November, 1955 by levy under a warrant of attachment on defendant's funds in a New York bank. The summons and complaint were served by publication and by mail.

The complaint alleges that during the period from May, 1953 to May, 1955 plaintiff, at defendant's request and for his account, financed the purchase of merchandise imported into Argentina. It is further alleged that in May, 1955 an account was stated and the balance of $1,378,507.55 found due to plaintiff from defendant. Defendant failed to appear in the action, and the default judgment was entered in due course in January, 1956. It does not appear when, if ever, defendant was served personally with notice of entry of the judgment.

Defendant, appearing generally, brought on this application to vacate the default in September, 1958. He states that when the regime of President Peron was overthrown in September, 1955, he, as a prominent figure in that regime, sought asylum in the Uruguayan Embassy in Buenos Aires. A few weeks later defendant surrendered to the new administration. He was then held in various prisons until March, 1957 when he escaped to Chile. Extradition proceedings were promptly commenced, and defendant was not released by the Chilean authorities until September, 1957.

Plaintiff concedes that defendant was in prison during the period when service was made. He denies, however, that

defendant was incommunicado and says that defendant, through his agents, was fully aware that the action had been commenced.

The controlling principles are well settled. As a matter of general policy, disposition of controversies on the merits is favored, and to that purpose defaults will be vacated upon a proper showing of excuse and the absence of willfulness (*Long Is. Trading Corp.* v. *Tuthill,* 243 App. Div. 617; *Baldwin* v. *Yellow Taxi Corp.,* 221 App. Div. 717; *Allen* v. *Fink,* 211 App. Div. 411, 415, mod. 213 App. Div. 845; 7 Carmody-Wait, New York Practice, p. 409). A corollary rule, however, is that before a default judgment will be opened, the defendant may be required to make full and complete disclosure of a meritorious defense (*Carpenter* v. *Weatherwax,* 277 App. Div. 264, 266–267; *City Bank Farmers Trust Co.* v. *Gitel,* 246 App. Div. 633; *Fitzgerald Mfg. Co.* v. *Alexander,* 200 App. Div. 164, 167–168, appeal dismissed 234 N. Y. 608; see, also, *Rothschild* v. *Haviland,* 172 App. Div. 562; 7 Carmody-Wait, New York Practice, *op. cit.,* pp. 415–416). The occasion for such full disclosure is particularly evident in a case such as this involving inevitably, if the default is relieved, great expense. Equally significant are the age of the default judgment and the fact that defendant had been free of imprisonment for a year. Thus, the circumstances explaining the default, the substance and merit of the alleged defense, and the consequences of opening the default are all to be measured as correlated factors.

Applying these principles, in order to merit relief from the default, there need be no finding that defendant was completely incommunicado or even that he did not acquire any knowledge of the institution of the action. There should be no question that during the crucial period when service was being made, and for almost two years thereafter, defendant was substantially disabled from protecting his interest in this case. If not completely incommunicado, he certainly was not at liberty to travel abroad and, as one closely identified with the Peron regime, was apparently at times in considerable personal danger. Upon his release, it would be reasonable to expect that defendant would falter in giving attention to all his complicated personal and business affairs. The disputed negotiations between defendant and plaintiff's agents, in Spain, after defendant's release from imprisonment, even if plaintiff's version is accepted, do not resolve this aspect of the matter. Moreover, it appears that plaintiff was well aware of defendant's difficulties, including actual imprisonment, when the summons and complaint were mailed to defendant's residence address. Thus, the circumstances strongly suggest, in the exercise of discretion, that

defendant be given an opportunity to defend on the merits provided he has a meritorious defense (see *Becker* v. *Sidweber,* 237 App. Div. 909; *Bonnell* v. *Rome Watertown & Ogdensburgh R. R. Co.,* 12 Hun 218; Civ. Prac. Act, §§ 108, 217).

Defendant has submitted sufficient proof that the account stated may be a forgery. With respect to the underlying debt, however, defendant claims, without amplification, that the advances made by plaintiff were for the account of an Argentinian corporation, of which defendant was admittedly an officer. He denies personal liability. No adequate disclosure is made with respect to the defendant's relationship with the corporation, the transactions allegedly giving rise to the obligation, and the extent of defendant's participation therein. Before discretion is exercised in defendant's favor, he ought lay bare his proof substantiating the defense that the obligation is the corporation's and not his. This involves no burdensome proof of a mere negative, as defendant argues, but the factual development of what defendant contends is his verison of the transactions he concedes occurred and in which plaintiff advanced moneys.

One further matter of significance remains. Where service has been made by publication on a nonresident who does not appear in the action, only property attached prior to the entry of judgment is subject to execution under the judgment (Civ. Prac. Act, §§ 520, 645; *McCarthy* v. *Culkin,* 254 N. Y. 328; Restatement, Judgments, § 34, especially *Comment f,* § 76). The judgment in this case, after appropriate recitals, provides that plaintiff recover of defendant the sum of $1,434,924.35 and have execution therefor. The funds attached at the institution of the action amounted to less than 10% of the amount of the eventual judgment.

A judgment in the larger amount conforming to the demand in the complaint, albeit limited in effect as one quasi in rem, has in the past apparently been considered acceptable (cf. *LeBaron* v. *Bartoli,* 274 N. Y. 499; 6 Bender's Forms for Civ. Prac. Acts [1959 rev.], pp. 661–662, Form No. 6578; 6 Nichols-Cahill, New York Civ. Prac. Acts — Forms, p. 487, Form No. 2756; 7 Carmody-Wait, New York Practice, *op. cit.,* pp. 286–287). Despite its form, the judgment has been interpreted as limited to the attached property (*Sturcke* v. *Link,* 176 Misc. 93, 99, SHIENTAG, J.).

In order to avoid unnecessary confusion, a judgment should express its true legal effect and the precise relief awarded (Rules Civ. Prac., rule 185). This judgment, therefore, should have expressly noted in the first instance that it was enforcible

only against property levied upon by virtue of the warrant of attachment at the time of entry of judgment (Civ. Prac. Act, §§ 493, 520). This is so because, where other than moneys are levied upon, the currency value of the property attached may not be ascertainable at the time of entry of judgment. Even when only moneys are attached questions of defendant's ownership of such funds may arise after the entry of judgment.

But there is no reason why, after the attached assets have been reduced to currency value, and finally applied in satisfaction of the judgment, the judgment may not be reduced so as to express its limited legal effect. The judgment is not for " a sum of money " within the meaning of section 510 of the Civil Practice Act and therefore cannot give rise to a lien. Moreover, except as to the disposition of the property attached, the judgment is not entitled to full faith and credit (*Combs* v. *Combs*, 249 Ky. 155; *Stewart* v. *Eaton*, 287 Mich. 466; 50 C. J. S., Judgments, § 897). " The judgment is valid to the extent and only to the extent that it affects the interest of the defendant in the property attached. This is true even though in form the judgment is a personal judgment " (Restatement, Judgments, *supra,* § 34, *Comment f.*). It does not have *res judicata* effect as to the balance due, nor does it bar a new action to recover such balance (Restatement, Judgments, *supra,* § 34, *Comments g., h.*).

Nor does the general appearance by defendant subsequent to the entry of the judgment quasi in rem, as has occurred in this case, extend the court's jurisdiction beyond that which existed at the time of judgment. Such general appearance does, it is true, confer jurisdiction in personam with respect to incidents affecting the limited judgment occurring therafter. (*Irving Trust Co.* v. *Seltzer*, 265 App. Div. 696, 701; *Weaver* v. *Weaver,* 96 Misc. 476; 3 Carmody-Wait, New York Practice, *op. cit.,* p. 392; but, see, *Revona Realty Corp.* v. *Wasserman,* 4 A D 2d 444, 450, appeal dismissed 5 N Y 2d 931.) In the event the default is opened, however, the general appearance does confer in personam jurisdiction for purposes of subsequent proceedings (*Chapman* v. *Chapman,* 5 A D 2d 257, concurring opinion by HALPERN, J., 264–266 and cases cited; 3 Carmody-Wait, New York Practice, *id.*).

It is recognized that the foregoing with respect to the form which the judgment in this case should have taken in the first instance, as well as the reduction in the amount of the judgment, represents a departure from long-standing practice. But in reason and policy, legal documents should express their true effect and not perpetuate a hollow and misleading formalism.

Accordingly, the order appealed from should be modified, on the law and the facts, and in the exercise of discretion, to direct that the judgment be reduced to the amount of $141,828.85, as actually applied to the satisfaction of the claim, and the order should be otherwise affirmed, without costs, with leave to defendant to renew his motion to open his default within three months upon a proper showing of merit, and upon such terms as may then be deemed appropriate. Settle order.

BOTEIN, P. J., RABIN, M. M. FRANK and VALENTE, JJ., concur.

Order unanimously modified, on the law and on the facts, and in the exercise of discretion, to direct that the judgment be reduced to the amount of $141,828.85, as actually applied to the satisfaction of the claim, and the order, as so modified, affirmed, without costs, with leave to defendant to renew his motion to open his default within three months upon a proper showing of merit, and upon such terms as may then be deemed appropriate. Settle order.