Nat H. Hentel, J.
A summary proceeding being a statutory creature requires a high degree of exactitude in its preparation, drafting and publication before a court will give it credence and determine its validity. This holdover proceeding whereby the landlord seeks to terminate the tenancy of the respondents, commercial subtenants, is an almost classic primer on what can and did, in fact, go wrong with the landlord’s case.
As my colleague, Judge Allen Murray Myers (Civil Ct., New York County) so ably said recently in Goldman Bros. v. Forester (62 Misc 2d 812, 814-815): “A summary proceeding is a special proceeding governed entirely by statute * * * and it is well established that there must be strict compliance with the statutory requirements to give the court jurisdiction * * * The essentials of the petition and notice of petition are specifically regulated and strictly construed.” (Emphasis supplied.) This court says “Amen” to that with respect to the circumstances in this case.
*883 Under paragraph 2 of the petition, verified on May 17, 1972, the landlord alleges that the said Mercedes Duran and the El Sombrero Luncheonette, Inc., are the tenant and subtenant of the store premises in question under the terms of a written lease for a term commencing October 15, 1969 and ending August 31,1973.
Paragraphs 4 and 5 of the petition allege that the “ respondents continue in possession of the premises without permission of the landlord after the expiration of the lease on May 16, 1972,” pursuant to a claimed “Five-Day Notice” which is otherwise undated. Paragraph 5 merely claims that the “ Five-Day Notice” of termination of tenancy “was served on the tenant pursuant to the terms of lease ” and that “ said tenants violated and are in violation of terms of lease.” (Emphasis supplied.)
The court notes that the affidavit of alleged personal service of the petition and notice of petition is patently defective in that Mercedes Duran, the named respondent tenant, was not served in any manner prescribed by law; and further it merely alleges personal service upon “ a managing agent ” of the El Sombrero Luncheonette, Inc., the named respondent undertenant, without identifying such individual by name.
Furthermore, the alleged service of the “Five-Day Notice” by mail on May 8, 1972, is also defective and fails to terminate the lease inasmuch as it was mailed to “Mercedes Duran and all other occupants of the store." It does not state that El Sombrero Luncheonette, Inc. or one of its designated officers was mailed such notice. How landlord expects the court to acquire jurisdiction over respondent El Sombrero Luncheonette, Inc. in this matter is beyond the understanding of the court. A corporation can only be served as prescribed by statute (infra) and this affidavit of service fails to fulfill any of the statutory requirements in order for the court to acquire jurisdiction of the undertenant.
Although it is established that such jurisdictional defects not pleaded as defenses, as is the case here, are deemed waived, nevertheless, the court feels constrained, on its own motion, to note defects in this statutory proceeding which are apparent merely from a cursory examination of the filed papers.
In passing, the court would like the parties to note that had the noted jurisdictional defects been pleaded as defenses, this petition would have to be dismissed because the court could not have possibly exercised jurisdiction over the named respondents. The landlord cannot obtain jurisdiction over the individual *884 respondent without proper service nor over the corporate respondent merely by waving the magic wand of alleged service upon a “Managing agent” without further identifying that individual by name so that such individual’s authority to accept process can be properly weighed and determined. (See CPLR. 311, subd. 1; and, also, Real Property Actions and Proceedings Law, §§ 731 and 735, which spell out the requirements for commencing a summary proceeding and the requirements for effecting proper personal service.) Furthermore, the petition was filed in court on May 23, 1972, more than three days after the alleged personal service (not otherwise perfected) of same on May 18, 1972, contrary to the provisions of subdivision 2 of section 735 of the Real Property Actions and Proceedings Law.
However, the court does not dismiss the petition because of these defects inasmuch as they are deemed waived by failure of the respondent to plead same. The court comments on them in pursuit of the court’s responsibility to assume an instructional role where such appears required.
Paragraph 17 of the lease reads: “It is expressly understood and agreed that in case the demised premises shall be deserted or vacated, or if default be made in the payment of rent or any part thereof as herein specified, or if, without the consent of the landlord, the tenant shall sell, assign, or mortgage this lease or if default be made in the performance of any of the covenants and agreements in this lease contained on the part of the tenant to be kept and performed, or if the tenant shall fail to comply with any of the statutes (etc.) * * * of the Federal, State, and City Government * * * or if the tenant shall file or there be filed against tenant a petition in bankruptcy or arrangement, or tenant be adjudicated a bankrupt or make an assignment for the benefit of creditors or take advantage of any insolvency act, the landlord may, if the landlord so elects, at any time thereafter terminate this lease and the term hereof, on giving to the tenant five days’ notice in writing of the landlord’s intention so to do, and this lease and the term hereof shall expire and come to an end on the date fixed in such notice as if the said date were the date originally fixed in this lease for the expiration hereof. Such notice may be given by mail to the tenant addressed to the demised premises.” (Emphasis supplied.) (Of., with reference to such printed clause, Granet Gonstr. Corp. v. Longo, 42 Mise 2d 798, 800, and the holding therein.)
The alleged “ Five-Day Notice ” annexed to the petition reads as follows:
*885 “To: Mercedes Duran, and all other occupants of the store premises located 37-63 58th Street, Woodside, New York. [The other occupants are not identified by name.]
“ You are hereby notified that pursuant to Section [sic] 17 of a lease dated October, 1969, the undersigned shall declare a termination to said lease to expire on May 16, 1972-, and that unless you remove from the said premises on May 16, 1972, the day on which your term expires, the landlord will commence Summary Proceeding under the Statute [not specifying] to remove you from said premises for the holding over after the expiration of your term.”
The affidavit of service by mail annexed to the filed copy of the alleged “Five-Day Notice” shows that on May 8, 1972, “the within Five-Day Notice [was served] upon Mercedes Duran and all other occupants of the store premises in this action at 37-63 58th Street, Woodside, New York ” by ordinary mail. Nowhere is it stated that the undertenant, El Sombrero Luncheonette, Inc., was served with such notice. Here, too, such defect in service shall be overlooked by the court since the respondents did not raise same as a defense in their pleadings.
The court observes that neither paragraph 5 of the petition nor the alleged 11 Five-Bay Notice ” (undated) specifies the happening of any of the contingencies or defaults enumerated in paragraph 17 of the lease as the basis for the landlord’s termination of the lease. The petition merely advises the respondents that they are in “ violation of terms of lease ”, and the alleged vague and indefinite notice only states that the lease is being terminated “ pursuant to Section 17 of a lease ” without spelling out any alleged violations or defaults thereunder.
Further, the lease calls for the payment of monthly rent “ in advance on the 15th day of each and every month during the term.” The landlord, who testified at the trial, purchased the subject premises on November 24, 1970, subject to the then existing store tenancy. He also admits that he accepted rent for the period April 15, 1972 to May 14, 1972, and also for the period May 15, 1972 to June 14, 1972, even though the “ Five-Day Notice ” allegedly served on May 8, 1972, terminated the lease as of May 16, 1972. Thus, the May 15 to June 14, 1972 rent was delivered to and accepted and received by the landlord on or after May 20, 1972, subsequent to the alleged lease termination date.

The petition and these proceedings thereunder must fail for the following reasons:

*886 I. The petition and the alleged “Five-Bay Notice” annexed and made part thereof are nullities in that they fail to state with any particularity the alleged violations or defaults under the lease upon which landlord claims to rely. Paragraph 5 of the petition merely sets forth a conclusion on the part of the landlord rather than the facts upon which he relies. How can the respondents possibly know what they must defend themselves against and how can they properly interpose any valid legal defenses they might be entitled to under these circumstances? (See Vaxler v. Weinstein, 70 N. Y. S. 2d 831.)
Subdivision 2 of section 731 of the Beal Property Actions and Proceedings Law states that‘ ‘ the notice of petition shall specify the time and place of the hearing on the petition and state that if respondent shall fail at such time to interpose and establish any defense that he may have, he may be precluded from asserting such defense or the claim on which it is based in any other proceeding or action.” (Emphasis supplied.) The petition is defective because it is vague and general and conclusory in nature thereby depriving respondents of any knowledge or facts upon which landlord allegedly relies to terminate the tenancy. The respondents are thus rendered incapable by virtue of landlord’s poor draftsmanship to interpose “ any defense that [they] may have ”.
Furthermore, subdivision 4 of section 741 of the Beal Property Actions and Proceedings Law requires petitioner in a summary proceeding to 1 ‘ state the facts upon which the special proceeding is based.” (Emphasis supplied.) What facts has petitioner set forth in his petition and 11 Five-Day Notice”? Giannini v. Stuart (6 A D 2d 418, 420) holds that “ a tenant is entitled to a concise statement of the ultimate facts upon which the proceeding is predicated so that the issues, if any there be, are properly raised and can be met.” (See, also, United Institutional Servicing Corp. v. Santiago, 62 Misc 2d 935, 937-938.)
II. Since rent was paid, accepted and retained for the month when the lease was allegedly terminated and after the date of alleged termination, this holdover proceeding may not be maintained by landlord even if we assume arguendo that the “ Five-Day Notice ” of termination was valid. (See John Melen, Inc. v. Acme Litho Plate Graining, 69 N. Y. S. 2d 647.)
Where rent is accepted by landlord after lease termination date (May 16, 1972), and acceptance of the May 15 to June 14, 1972, monthly rent was made on or about May 20, 1972, and the petition herein having been filed on May 17, 1972, such pro *887 ceeding is not maintainable notwithstanding subdivision 1 of section 711 of the Real Property Actions and Proceedings Law which applies to residential tenants and not to commercial holdover tenants such as we have here. See United Institutional Servicing Corp. v. Santiago (62 Misc 2d 935, 937) which states: “ The only accommodations, which are now regulated as to rentals and evictions, are those which are primarily used for residential purposes. The regulations of business and commercial spaqe has been abandoned.”
The court wishes to point out that the commencement of a summary proceeding occurs when the petition is filed and a precept is issued thereon (May 17, 1972), and not when service is allegedly made. It is also clear that a landlord may not maintain a summary proceeding if the rent for the “ holdover month ” has been collected. Thus, here, landlord collected rent for the “ holdover month” after he allegedly had terminated the lease and had commenced this proceeding. He nullified his intention by his act. (See Wagner Bldg. v. United Cigar-Whelan Stores Corp., 203 Misc. 382.) “ If the proceeding actually had been commenced prior to the receipt of the [May 15 to June 14, 1972 rent on or about May 20, 1972] then the landlord thereafter could retain or negotiate the .same without in any respect impairing its rights to maintain the said proceedings ’ ’, providing the subject of the proceeding was a residential premises (Real Property Actions and Proceedings Law, § 711, subd. 1; Wagner Bldg. v. United Cigar-Whelan Stores Corp., supra, p. 385). But here, it cannot be held that there was a holding-over without the landlord’s permission, since subdivision 1 of .section 711 of the Real Property Actions and Proceedings Law is inapplicable to this proceeding concerning a commercial premises. (See Rasch, New York Landlord and Tenant Summary Proceedings [2d ed.], § 1004, p. 452.)
The court also notes that the landlord attempted to cure his defective and unspecific petition during trial by testifying about certain alleged defaults by certain undertenants concerning failure to pay water taxes and to repair a broken plate glass window (since admittedly repaired). Let it be said that the landlord did not move to amend his pleadings to conform to the proof at the end of the trial.
HI. Finally, the court comments with respect to the landlord’s proof and argument at the trial that the respondents have no defense against lease termination inasmuch as respondents had “ assigned ” the lease allegedly to others without the landlord’s written consent as required by printed paragraph 4 *888 of the lease. The documents before the court in evidence show that the original lease was made between Helen Luhrs as landlord and Salvatore Viccari and Boy E. Tellier as tenants in October, 1969. Paragraph 27 of the lease however states: 1 ‘ The landlord hereby consents to the assignment of this lease to Mildred L. Papa and any assignment of hers loithout further consent.” (Emphasis supplied). It seems to the court that paragraph 27 neutralizes paragraph 4 with respect to subsequent assignments in the absence of firm and credible proof as to the nature and extent of such subsequent assignments which the landlord failed to introduce at the trial to sustain his burden of proof.
On July 2, 1970, it appears that the said Mildred L. Papa assigned her leasehold interest in the premises to Mercedes Duran. The plaintiff landlord then purchased the store premises from Helen Luhrs on November 24, 1970, subject to the then existing tenancy. Further, the court has before it an undated document which does not specify the effective date of an assignment of leasehold interest from Mercedes Duran as an individual to El Sombrero Luncheonette, Inc., which Mercedes Duran executes as president of the said corporation — evidently her own corporate entity.
Under these circumstances, it appears that the attempt to claim a default under paragraph 4 of the lease, would not hold water as the touchstone for declaring the lease terminated. A consent by the landlord to the first assignment of a lease obviates the necessity for further consent to subsequent assignments. “A condition against assignment, once dispensed with, is dispensed with forever.” (Murray v. Harway, 56 N. Y. 337, 343; Gillette Bros. v. Aristocrat Rest., 239 N. Y. 87, 90; Lynch v. Joseph, 228 App. Div. 367; and Nipet Realty v. Melvin’s Rest. & Bar, 67 Misc 2d 790.) At the time landlord purchased the premises from the then owner, he must be presumed to have known about the occupancy of the store and the contents of paragraph 27 of the lease which should have been a red flag to him as a waiver of assignability. He took no more than Helen Luhrs could convey to him.
Further, it appears that the landlord would be estopped from claiming a violation of the “ non-assignability without consent clause ” of the lease (par. 4) because it has been shown by the landlord’s own testimony that after he took over as landlord, he accepted rent from one Huerfano who was operating the luncheonette early in 1971, and, subsequently, he accepted rent from one Baul Vasques in 1972, when obviously neither of these *889 gentlemen was the lessee Viccari or Tellier or the assignee, sublessee Mildred Papa. In Woollard v. Schaffer Stores Co. (272 N. Y. 304, 312), the court enunciated the applicable rule ‘ ‘ that acceptance of rent by the landlord, after the acquisition of knowledge by him of the violation of the terms of the lease in subletting without the landlord’s written consent, constitutes a waiver of the forfeiture.” It thus appears that the landlord has waived any rights to contest the tenancy herein on the basis of a violation of paragraph 4 of the lease.
For these enumerated reasons (I, II, III), the motions of the respondents made at the end of the trial are granted and the petition is dismissed. Judgment for the respondents accordingly.