OPINION OF THE COURT
C. Stephen Hackeling, J.
Mitchell Gutkowski, the above-captioned respondent, moves this court pursuant to an order to show cause seeking to vacate a judgment of possession and warrant of eviction entered July 23, 2009 upon default. The grounds stated for the requested relief involve an assertion that federal law requires prior receipt of a 90-day notice to quit and assorted alleged defects in service of the referee’s deed, notice to quit and the instant petition. The above-captioned petitioner, Juan Collado, a foreclosure purchaser of the premises located at 58 Manchester Road, *163 Huntington, New York, opposes the vacatur relief arguing the inapplicability of federal law, compliance with New York’s RPAPL eviction statutes and the failure of the respondent to offer an excuse for his default. The court scheduled a hearing of the matter for October 8, 2009 at which time the respondent requested that the matter be submitted upon papers, and declined an opportunity to conduct a sworn hearing.
Undisputed Facts
The undisputed relevant facts are that the petitioner is the owner of the real property premises located at 58 Manchester Road, Huntington, New York, by virtue of a foreclosure referee’s deed dated June 19, 2009, issued pursuant to a June 5, 2009 assigned bid arising out of an April 30, 2009 foreclosure sale. The petitioner served a notice to quit and certified referee’s deed upon the respondent’s wife Lynn Gutkowski at the premises on June 25, 2009. She also accepted a copy of same as a person of suitable age and discretion, on behalf of her husband Mitchell Gutkowski. Thereafter, the above-captioned dispossess petition was served personally upon the respondent and filed with the court on July 15, 2009, returnable July 23, 2009. The respondent failed to appear and a default was entered resulting in the subject judgment and warrant of eviction. Effective May 20, 2009, title 12 of the United States Code was amended to add the “Protecting Tenants at Foreclosure Act.” The record presented no indication whether the subject foreclosure involved a federally subsidized mortgage loan.
Issue Presented
Is the respondent entitled to vacate the petitioner’s judgment of possession? The test to be applied in determining whether the respondent’s default judgment should be vacated is whether the facts presented demonstrate an excusable default in appearance and a meritorious defense. (See Benadon v Antonio, 10 AD2d 40 [1st Dept 1960].)
Discussion
Meritorious Defense
The respondent’s foremost meritorious defense argument requires codifying a brand new federal statute involving a case of national first impression. The Protecting Tenants at Foreclosure Act of 2009 (Pub L 111-22, tit VII, § 702 [a], 123 US Stat 1660-1661, amending Emergency Economic Stabilization Act of *164 2008, div A, tit I, § 110 [codified at 12 USC § 5220 Note] [hereinafter 12 USC § 5220 Note]) provides:
“(a) In general. — In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title [May 20, 2009], any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to “(1) the provision by such successor in interest of a notice subject to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and
“(2) the rights of any bona fide tenant, as of the date of such notice of foreclosure.” (Emphasis added.)
Titles 12 and 42 of the United States Code are the statutory mechanisms wherein the federal government created and continues to maintain the Department of Housing and Urban Development (HUD), the Federal Housing Administration (FHA) and other related agencies which administer its affordable housing programs through subsidized federal mortgages and direct rent payments.
On its face, 12 USC § 5220 Note (a), and its accompanying legislative summary in the Federal Register (74 Fed Reg [No. 120] 30106 [2009]), appears to support the respondent’s assertion of a meritorious defense, in that the use of the word “or” in subdivision (a) spreads the 90-day notice to quit requirement beyond HUD, FHA or other federally related properties to “any dwelling and residential property.”* It is undisputed in this case that only a 10-day notice was utilized per New York State law (RPAPL 713). The utilization of the conjunctive expander word “or” in this instance is intriguing as a review of the voluminous provisions of titles 12 and 42 reveals no other instance where Congress seeks to regulate real property rights outside of its HUD/FHA subsidized housing mission. The court’s threshold query is whether this expansion of federal authority to areas not involving federal expenditure is constitutionally permissible.
*165 Authority to Regulate
The fundamental premise/truism of the United States Constitution is that the power and regulatory ability of the federal government are limited to those areas surrendered by the states. (See generally United States v Darby, 312 US 100, 124 [1941], citing Story, Commentaries on the Constitution §§ 1907, 1908; 1 Annals of Congress, at 432, 761-768.) Article I, § 8 of the United States Constitution expressly details the 18 areas which the federal government may lawfully regulate. All other areas not expressly delegated to the United States “are reserved to the States ... or to the people.” (US Const Amend X; see also Amend IX.) Quoting James Madison, the United States Supreme Court has held that “[t]he powers delegated ... to the federal government are few and defined. Those which . . . remain in the State governments are numerous and infinite.” (United States v Lopez, 514 US 549, 552 [1995].)
The creation of rights and responsibilities concerning a private landlord-tenant relationship is not listed as one of the 18 enacted federal powers. As such, the justification for a federal presence and the preemption of state law in this landlord-tenant area would seem to fall to the general “catchall” power detailed in US Constitution, article I, § 8 (1) which provides: “Section 8. [1] The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States; but all Duties; Imposts and Excises shall be uniform throughout the United States.”
Section 8 (1) is generally known as the “Taxation and Expenditure” power under which Congress created and operates its assorted affordable housing departments. The mission of these agencies is to expend federal funds to facilitate and subsidize affordable housing in the United States. (See 42 USC § 1437 [a] [1].) Conditioned upon the expenditure of the federal treasury, Congress may regulate how HUD, the FHA and other related agencies are to administer themselves and spend their funds. (South Dakota v Dole, 483 US 203 [1987]; see also David E. Engdahl, The Basis of the Spending Power, 18 Seattle U L Rev 215 [1995].) However, absent a federal subsidy, Congress has no authority to regulate the private relationship of a landlord and tenant, which is the province of state law. The law is settled that the “general welfare” language does not extend section 8 (1) to issues of local non-interstate concern such as tenants’ rights unless linked to United States spending through its *166 federal housing agencies. (See Edward C. Walterscheid, Conforming the General Welfare Clause and the Intellectual Property Clause, 13 Harv JL & Tech 87 [1999].) The reason being that to hold otherwise would extend federal control to arguably every area of human endeavor and vitiate the constitutional framers’ requirement that “federalism” involves a limited universe of power and that the states retained all but expressly ceded powers. (United States v Butler, 297 US 1 [1936].)
Statutory Construction
In furtherance of its members’ oath of office to uphold the Constitution, it is presumed that Congress intends to act constitutionally. (See generally United States v Lopez, 514 US 549, 577-578 [1995, Kennedy, J., concurring], citing The Great Speeches and Orations of Daniel Webster, at 227-272 [E. Whipple ed 1879].) One of the primary rules of federal statutory construction is that the court may make a nonliteral interpretation so to reconcile and disregard the language of the statute or to correct a manifest error or absurdity. (See Holy Trinity Church v United States, 143 US 457 [1892]; Peter Pan Fabrics, Inc. v Martin Weiner Corp., 274 F2d 487 [2d Cir 1960].) The meaning of a word such as “or” may be construed in other than its plain and ordinary sense so as to correct a mistake and to meet constitutional muster. (See United States v Rumely, 345 US 41 [1953]; Blau v Oppenheim, 250 F Supp 881 [SD NY 1966].) When considering whether Congress intended to extend the regulatory jurisdiction of an existing federal program, the court is permitted to look beyond the words of the statute to effectuate its underlying purpose. (Salt Riv. Project Agric. Improvement & Power Dist. v Federal Power Commn., 391 F2d 470 [DC 1968].) Statutes are instruments of government, not exercises in composition, and a departure from their literary reading sometimes is necessary. (See Malat v Riddell, 383 US 569 [1966].)
The United States Supreme Court, quoting Judge Learned Hand, has held that “[t]he art of [statutory] interpretation is ‘the art of proliferating] a purpose.’ ” (United States v Shirey, 359 US 255, 261 [1959], quoting Brooklyn Nat. Corp. v Commissioner of Internal Revenue, 157 F2d 450, 451 [2d Cir 1946].) Precedent exists that requires this court to ignore the plain meaning of the word “or,” inserted into a hastily enacted amendment, to make it consonant with the function sought to be served (see Clark v Uebersee Finanz-Korp., A.G., 332 US 480 *167 [1947]; see also Markham v Cabell, 326 US 404 [1945] [which held that the use of the word “or” to add an additional jurisdictional class which nullifies/sterilizes the limits of the original covered class may be disregarded in the interest of statutory harmony]). In furtherance of same, the simplest way to restore constitutionality to section 5220 Note is to simply deem the insertion of the word “or” in subdivision (a) as a scrivener’s error and to ignore same. Simply removing it establishes the language as follows:
“(a) In general. — In the case of any foreclosure on a federally-related mortgage loan on any dwelling or residential real property after the date of enactment of this title [May 20, 2009], any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest to—
“(1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and “(2) the rights of any bona fide tenant, as of the date of such notice of foreclosure.” (Emphasis added.)
Under this construction, the statute limits its reach to only those tenancies arising from dwellings or residential real property in which a federally related mortgage was foreclosed and comports with the Constitution as Congress is not expanding its regulation to individuals who have not attached themselves to the federal purse strings. This is consistent with the affordable housing “spending power” jurisdictional grant embodied in the rest of the United States Code. It also corrects the illogical coupling of a subsequent universal jurisdictional grant which serves to nullify a previously described limited jurisdictional grant. Without the word “or” the limited grant (federally related loans) are now further limited to federally related mortgages on residential dwellings. As the petitioning tenant does not even allege a federal loan nexus, he is not jurisdictionally covered by this federal statute. Moreover, section 5220 (a) has already been judicially construed not to contain a “private right of action.” (Mangosing v Wells Fargo Bank, 2009 WL 1456783, 2009 US Dist LEXIS 47399 [D Ariz 2009].) To extend the 90-day notice to non-federally-related loans would inherently have created a private right of action.
*168 New York Law Defenses
As to the tenant’s alternative arguments sounding under New York State law the court notes the absence of any excuse for respondent’s failure to appear on July 23, 2009, a necessary component of an application to vacate on the grounds of excusable default. In fact, at no point does the respondent seek to rebut the petitioner’s process server’s affidavit that Mitchell Gutkowski knew about the petition’s return date and advised him he would not appear. (See exhibit No. 4, affidavit in opposition.)
The respondent claims that the petition should be dismissed as the referee’s deed was not exhibited to him. In a summary proceeding under RPAPL 713 (5), a purchaser of real property at a mortgage foreclosure sale must allege that either the deed delivered pursuant to the foreclosure sale or a certified copy of such deed has been exhibited to the persons sought to be removed. (2 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 35:8 [4th ed].) The notice to quit served upon the respondent’s wife contained a copy of the referee’s deed, which was accompanied by a certification (which complied with CPLR 2105) of Juan Collado, an attorney admitted to practice law in New York State. Respondent’s conclusory statement that the deed was not exhibited to him does not constitute a defense to the proceeding.
The respondent seeks to jurisdictionally dismiss the proceeding, alleging that the notice to quit does not use the words “summary proceeding” to describe the type of action that would be commenced against him upon his failure to surrender possession. This contention is without merit. The notice to quit substantially complies with the statute and serves as an adequate basis for this proceeding. Such notice need not be in the exact language of the statute, rather it must be “to the effect” prescribed in the statute. (Folz v Shalow, 16 NYS 942 [Ct CP 1891]; 2 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 30:47 [4th ed].) The notice herein adequately apprised respondent that in the event he failed to surrender possession, “a legal proceeding shall be commenced against [respondent] to remove [respondent] from the premises.”
The respondent also alleges that the notice to quit (dated June 23, 2009) is defective because it does not state an exact date on which respondent must surrender possession. In order to maintain this proceeding, petitioner was required to give respondent the statutory 10-day notice to quit prior to commenc *169 ing this proceeding. (2 Dolan, Rasch’s Landlord and Tenant— Summary Proceedings § 35:8 [4th ed].) It is undisputed that the respondent’s 10-day notice was served on him (by delivery to a person of suitable age on June 25, 2009 and by mailing on June 26, 2009). The instant proceeding was not commenced until July 17, 2009, when the petition was filed. (Olivero v Duran, 70 Misc 2d 882 [Civ Ct, Queens County 1972]; 528 E. 11th St. H.D.F.C. v Durieaux, 164 Misc 2d 595 [Civ Ct, NY County 1995].) Respondent was provided with sufficient notice prior to commencement of this special proceeding. Respondent’s claim that he was unable to ascertain what date was 10 days from his receipt of the notice to quit is unavailing.
Any objections respondent may possess, such as that he allegedly was not served in a prior foreclosure action, appear to be related to that action and are not in the subject matter jurisdiction of this court. Moreover, the court notes that a “John Doe” was served therein. The respondent has not shown he is more than a mere occupant at the premises.
Lastly, the court notes that the respondent did not avail himself of the court-scheduled opportunity to conduct a hearing subject to oath and cross-examination in this matter. Such a hearing would have been a more suitable forum to establish the validity of his assertion that a lease exists and that he is a victim in this instance. The failure to produce a lease and to state under oath that he has been paying rent, together with his statement to the process server, creates an inference that no such lease exists, that no rent has been paid in excess of a year, and that the respondent lacks the “clean hands” necessary to petition this court to vacate its prior judgment premised upon an acceptable excuse for default and a meritorious defense.
Accordingly, the above-captioned tenant respondent’s application is denied and the petitioner and the Sheriff may immediately proceed to eviction without the need for any further 72-hour notice.

 The court also notes that subdivision (a) (2) (A) of this statute also utilizes the word “or” to further extend its reach to include non-bona fide tenants who lack a lease.